UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANTHONY R. JONES, | CASE NO. C12-5346-RAJ-MAT |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION RE: SOCIAL SECURITY DISABILITY APPEAL |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Anthony R. Jones proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1986.[1] He has a high school education and no past

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case

REPORT AND RECOMMENDATION
PAGE -1

relevant work.  (AR 25-26.)

Plaintiff filed an application for SSI on September 18, 2008, alleging disability beginning May 4, 2007. (AR 18.)  Plaintiff's application was denied at the initial level and on reconsideration, and he timely requested a hearing.

On November 18, 2010, ALJ Gordon W. Griggs held a hearing, taking testimony from plaintiff, and a vocational expert.  (AR 33-77.)  On January 6, 2011, the ALJ issued a decision finding plaintiff not disabled.  (AR 18-27.)

Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on March 14, 2012 (AR 1-6), making the ALJ's decision the final decision of the Commissioner.  Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date.  At step two, it must be determined whether a claimant suffers from a severe impairment.  The ALJ found severe plaintiff's borderline intellectual functioning, depression, personality disorder, and psychotic disorder.  Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

---

Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.  The ALJ found plaintiff able to perform a full range of work at all exertional levels, but with the following nonexertional limitations:  plaintiff is limited to tasks that can be learned in thirty days or less, and that involve no more than simple, work-related decisions and few workplace changes.   Because the ALJ found no past relevant work, he proceeded directly to step five, where the burden shifts to the Commissioner to demonstrate the claimant retains the capacity to make an adjustment to work existing in significant levels in the national economy.   With the assistance of a vocational expert, the ALJ found plaintiff capable of performing other jobs, such as the position of Cleaner II (DOT 919.687-013) and Basket Filler (DOT 529.687-010).

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erroneously evaluated the medical evidence, failed to give legally sufficient reasons for evaluating his credibility, and erred in considering the lay witness statements.  He requests remand for further administrative proceedings.  The Commissioner

argues that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons set forth below, the Court agrees with the Commissioner.

## Credibility Assessment

In assessing credibility, an ALJ must first determine whether a claimant presents "objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Given presentation of such evidence, and absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *Id. See also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

The ALJ's credibility assessment must be rendered with sufficiently specific findings, supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

One does not need to be "utterly incapacitated" in order to be found disabled under the

Social Security Act. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Nevertheless, a claimant's claims of "a totally debilitating impairment" may be discredited when the claimant reports participation in everyday activities that indicate capacities transferrable to a work setting, even if those activities suggest some difficulty functioning. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). As these cases illustrate, the ALJ may use ordinary techniques of credibility evaluation in determining what weight will be given to the claimant's testimony as to the severity of his symptoms and impairments. *Smolen v. Chater,* 80 F3d 1273, 1284 (9th Cir. 1996). *See also* Social Security Ruling (SSR) 88-13.

Here, the ALJ found plaintiff's testimony about the intensity, persistence, and limiting effects of his symptoms not entirely credible. In analyzing these allegations, the ALJ focused primarily on discrepancies between plaintiff's testimony and the rest of the evidence:

> Despite the claimant's allegations that he is unable to work on a regular and consistent basis due to mental impairments, the record shows that the claimant's statements are not fully credible. The record shows that the claimant provides child-care to his infant and toddler-aged daughters, takes care of pets, and performs self-care and numerous activities of daily living on his own, without the assistance of others. [AR 197-204, 205-12, 360-64.]
>
> The claimant alleged that he needs reminders from his grandmother to perform tasks, however his grandmother reported that she tries to respect the claimant's privacy, and therefore she is not sure what he does during most of the day. [AR 205.]
>
> The claimant reported that he lost his last job performing ground maintenance because he took allergy medication, and fell asleep on the job, which suggests that the discharge was not due to a mental impairment or inability to perform a job task. [AR 361.]
>
> At the hearing, the claimant provided poor excuses for not following up with mental health counseling in 2008, and for not following up with job search activities. The claimant also testified that when he left the house, his girlfriend and grandmother could not properly take care of the children, without his

> intervention and assistance.  This statement is inconsistent with many of the claimant's other statements regarding the need for assistance and reminders, undermining the claimant's overall credibility.
>
> The claimant appears to lack the maturity and motivation to exercise the self-discipline necessary to look for and maintain simple, unskilled work.  An absence of maturity and motivation is not a work-related impairment.

(AR 22-23.)

Plaintiff disputes the conclusions reached by the ALJ in evaluating the evidence.  However, the Court finds plaintiff's arguments unavailing.  At the most, plaintiff simply suggests alternative interpretations of the evidence.

For example, plaintiff disputes the ALJ's interpretation of Dr. Raney's description of the reason he was fired from his ground maintenance job, arguing the sleeping incident was only one link in the chain that led to his termination.  Dr. Raney reports plaintiff telling him in the examination:  "He recalls some emotional distress because of his allergies.  He took some Benadryl once and fell asleep on the grass.  After that he was fired.  He has not worked since."  (AR 361.)  Plaintiff now suggests his poor job performance "set the stage for his termination[,]" (Dkt. 16 at 14), while a review of plaintiff's testimony does not show he made such an assertion at the hearing (AR 49-50).

Plaintiff argues the ALJ unreasonably discounted his credibility by commenting on his "poor excuses" for not following up with mental health treatment or job search activities, since these problems are wholly consistent with his impairments.  He notes he was dropped from DSHS programs because he did not turn in documents on time, missed at least one consultative examination, and even missed his first hearing.  The ALJ noted, however, that plaintiff testified the reason he could not make it to job interviews was that his children could not be

taken care of by his girlfriend or his grandmother without his assistance and intervention. (AR 65-66.) The ALJ did incorporate significant limitations on plaintiff's RFC due to his mental impairments, but found his asserted complete inability to look for and maintain even simple, unskilled work attributable to a lack of maturity and motivation. (AR 23.)

Plaintiff contends the ALJ overlooked a questionnaire submitted by his grandmother in July 2010, where she explained the only way to get plaintiff to complete a chore was to remind him. However, to the contrary, the ALJ specifically mentioned this document in summarizing Karen Wheeler's statements. (AR 25.) As further discussed below, the ALJ provided germane reasons for giving less weight to Ms. Wheeler's statements about plaintiff's daily activities and problems because of her previous statement that she tried to give plaintiff and his girlfriend privacy and did not know what they did after they arose and had breakfast. (AR 205.)

The ALJ also cited evidence that plaintiff was able to provide child care to his infant and toddler-aged daughters, take care of pets, perform self-care and numerous other activities of daily living on his own without assistance. The ALJ reasonably found plaintiff's ability to perform these activities as contradictory of his asserted inability to perform any work.

The ALJ's interpretation of the evidence, if reasonable, will not be second-guessed by this Court. *See Thomas*, 278 F.3d at 954. The Court finds the ALJ provided legally sufficient reasons for evaluating the credibility of plaintiff's statements.

## Medical Opinion Evidence

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester*, 81 F.3d at 830. Where not contradicted by another

physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751). Rather than merely stating her conclusions, the ALJ "must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

The ALJ need not discuss each piece of evidence in the record. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Instead, "she must explain why 'significant probative evidence has been rejected.'" *Id*. (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)).

A.   <u>Daniel Neims, Psy.D.</u>

Plaintiff disputes the weight assigned by the ALJ to the opinion of evaluating psychologist Daniel Neims. The ALJ noted that "[d]espite the claimant's unremarkable mental status test results, Dr. Neims opined that the claimant was markedly impaired in his ability to exercise judgment and make decisions, and in his ability to respond appropriately to and tolerate the pressure and expectations of a normal work setting." (AR 23.)

Plaintiff suggests the ALJ is an "other source" who may not substitute his own interpretation of the evidence for that of the medical source. This novel argument misses the

mark. Indeed, it is the role of the ALJ to resolve conflicts in the medical record. *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). *Accord Thomas*, 278 F.3d at 956-57 ("'When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict.'") (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). The Commissioner need not give "any special significance" to opinions from any medical source, treating or otherwise, on an issue reserved to the Commissioner, such as whether a claimant is disabled or unable to work, or the nature and severity of a claimant's impairments. 20 C.F.R. § 416.927(d)(3).

Here, the ALJ reasonably found Dr. Neims' psychological evaluation internally inconsistent. Dr. Neims noted plaintiff to be interested in working and "highly motivated" to work by his impending fatherhood. (AR 307.) Yet, despite opining plaintiff was a "strong D[epartment of] V[ocational] R[ehabilitation] candidate," with no more than mild limitations in his ability to understand, remember and follow simple or even complex instructions, and conducting an unremarkable mental status examination, Dr. Neims found plaintiff "markedly" impaired in his ability to exercise judgment and make decisions, and respond appropriately to and tolerate the pressure and expectations of a normal work setting. (*Id.*)

While plaintiff suggests an alternative interpretation of Dr. Neims' opinions, he falls short in convincing this Court that the ALJ's interpretation of the evidence was unreasonable. In such a situation, a reviewing court must uphold the ALJ's conclusion. *Thomas*, 278 F.3d at 954. The Court finds no error in the ALJ's evaluation of Dr. Neims' opinions.

B.   <u>James Raney, M.D.</u>

Plaintiff argues the ALJ failed to articulate specific and legitimate reasons supported by

substantial evidence in the record for the evaluation of the opinion of Dr. Raney, another consultative examiner. The ALJ found inconsistent, on the one hand, Dr. Rainey's opinions that plaintiff could perform simple and repetitive tasks, would likely be able to accept instructions from supervisors and interact well with co-workers and the public, and maintain regular attendance and complete a normal workday and workweek without interruptions from his condition, as compared to Dr. Raney's conclusion that plaintiff appeared unable to perform work activities on a consistent basis without special or additional instruction or supervision. (AR 24.) The ALJ also found this portion of Dr. Raney's conclusions to be contradicted by evidence showing plaintiff was capable of conducting his affairs and caring for his children independently, on a daily basis, including plaintiff's own testimony that his girlfriend and grandmother could not care for the children without his assistance and intervention (AR 66, 198, 206). The ALJ further noted that plaintiff told Dr. Raney he had been fired from his last job after his allergy medication caused him to fall asleep, rather than because of an inability to perform job tasks.[2] Dr. Raney also opined plaintiff could deal with the usual stress encountered in competitive work. (AR 364.)

Plaintiff argues that other evidence, such as the letter from his uncle describing his work experience at the Kitsap Golf and Country Club, supports Dr. Raney's conclusion that plaintiff would need special or additional supervision in order to succeed in a work setting. However, as described below, the ALJ conducted a legally sufficient evaluation of this lay witness statement, as well as the statement from plaintiff's grandmother. (AR 25.) While plaintiff

---

[2] Plaintiff urges a different interpretation of Dr. Raney's narration of this incident (Dkt. 16 at 14, AR 361), but the Court finds the ALJ's interpretation at least equally rational.

urges a different evaluation of these statements, it is not the function of this Court to re-weigh the evidence. Rather, the reviewing Court is required to uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Molina,* 674 F.3d at 1111 (citing *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008)). The Court, therefore, also finds no error in the evaluation of Dr. Raney's opinions.

C.      State Agency consultant

State agency psychological consultants are highly qualified experts in the evaluation of the medical issues in disability claims under the Social Security Act. 20 C.F.R. § 416.927(f)(2)(i); SSR 96-6p. The ALJ is not bound by their opinions, but must consider their findings and explain the weight given to them. *Id*. In appropriate cases, their opinions may be given more weight than that of treating or examining sources. SSR 96-6p.

Plaintiff was evaluated in June 2009 by a state Disability Determination Services psychologist, Gary Nelson, Ph.D. Dr. Nelson found plaintiff mildly limited in activities of daily living and social functioning, and moderately limited in concentration, persistence, and pace. Dr. Nelson found plaintiff able to perform simple, repetitive tasks, and to maintain concentration and persistence for a full workday with regular breaks. He felt plaintiff could work with the public, accept instructions from supervisors, adapt to change in the workplace and make simple work-related decisions on his own. (AR 365-82.) The ALJ gave significant weight to this opinion, finding it consistent with the overall evidence of record. (AR 24.)

Plaintiff asserts Dr. Nelson based his assessment on Dr. Raney's consultative examination and contends the ALJ erred in relying on Dr. Nelson's opinion "without adequately resolving the conflicts between this opinion and the opinions of Dr. Neims and Dr.

Raney." (Dkt. 16 at 9.) However, this argument fails as the Court finds the ALJ's assessment of the consulting examiners' opinions to be supported by substantial evidence.

<u>Lay Witness Statements</u>

Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and cannot be disregarded without comment. *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ can reject the testimony of lay witnesses only upon giving germane reasons. *Smolen*, 80 F.3d at 1288-89 (finding that rejection of testimony of family members because, *inter alia*, they were "'understandably advocates, and biased'" amounted to "wholesale dismissal of the testimony of all the witnesses as a group and therefore [did] not qualify as a reason germane to each individual who testified.") (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).

An ALJ need not, however, "discuss every witness's testimony on a[n] individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114. Instead, where an ALJ provides germane reasons for rejecting the testimony of one witness, the ALJ need only point to those reasons upon rejecting similar testimony offered by a different witness. *Id*. (citing *Valentine v. Comm'r SSA*, 574 F.3d 685, 694 (9th Cir. 2009) (because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony")).

Plaintiff's uncle, David Jones, provided a written statement describing plaintiff's difficulties with a job as a dishwasher and prep cook at the Kitsap Golf and Country Club in December 2003. (AR 260.) The ALJ considered the statement, noting plaintiff admitted he

REPORT AND RECOMMENDATION
PAGE -12

was dependent on methamphetamines from 2003 through 2006, and finding Mr. Jones' observations about his nephew not germane to plaintiff's functional capacity when not impaired by drug dependence. (AR 25.)

Plaintiff challenges this finding, arguing the ALJ should have conducted a proper drug abuse and alcoholism (DAA) analysis if he considered substance use to be a factor in plaintiff's impairments. This argument fails. The ALJ is not required to conduct the DAA analysis until plaintiff has been found disabled, after the ALJ proceeds through the full five step progressive analysis.[3] Here, the ALJ did not find plaintiff disabled and, therefore, was not required to conduct the DAA analysis. On the other hand, the fact that Mr. Jones' observations of plaintiff were made during a period of admitted substance abuse by plaintiff was germane to the ALJ's evaluation of the weight to be given to those observations.

Plaintiff's grandmother, Ms. Wheeler, provided two questionnaires regarding plaintiff's activities and functional abilities. (AR 205-12, 231-35.)[4] The ALJ observed that "as the claimant's grandmother and primary source of financial support, Ms. Wheeler may be less than objective in her observations." (AR 25.) Plaintiff argues this reason is not germane, but the this comment was not an improper, broad rationality about family members in general, but,

---

[3] A claimant is not entitled to disability benefits "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Therefore, where relevant, an ALJ must conduct a DAA analysis and determine whether a claimant's disabling limitations remain absent the use of drugs or alcohol. 20 C.F.R. §§ 404.1535, 416.935. The ALJ must, first, identify disability under the five-step procedure and, second, conduct a DAA analysis to determine whether substance abuse was material to disability. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). "If the remaining limitations would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability. If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied." *Parra v. Astrue*, 481 F.3d 742, 747-48 (9th Cir. 2007).

[4] Again, contrary to plaintiff's contention, the ALJ cited both lay statements. (AR 25.)

rather, a specific, non-abstract reason tied to this particular witness. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) ("The ALJ also considered Shields' 'close relationship' with Greger, and that she was possibly 'influenced by her desire to help [him].' The ALJ's reasons for doubting Shields' credibility are germane to her; accordingly, it was not error for the ALJ to disregard her testimony.")

Plaintiff also challenges the substantial evidence support of the ALJ's evaluation of Ms. Wheeler's statements about the necessity to provide repeated reminders to plaintiff to perform tasks. The Court, however, finds the ALJ's consideration of these statements to withstand scrutiny. As previously noted, the ALJ reasonably evaluated Ms. Wheeler's statements about plaintiff's abilities in the context of her statement that she tried to give plaintiff and his girlfriend privacy and did not know what they did after they arose and had breakfast. (AR 205.) The ALJ cited various activities that Ms. Wheeler described plaintiff as being able to perform, including that he had no trouble with personal hygiene tasks other than needing a reminder to cut his hair, that he was able to get up each morning to take care of his two young daughters and feed the pets, that he could prepare daily meals for himself and the children, and could perform household chores with some reminders. Ms. Wheeler stated plaintiff went out on a daily basis, drove a car, and did weekly food shopping. He socialized regularly with his family and occasionally with others. The ALJ accepted some of Ms. Wheeler's statements about plaintiff's problems with comprehension and short-term memory, and factored them into the RFC finding. (AR 25.) However, the ALJ found plaintiff's ability to engage in these activities, on the whole, not consistent with the extensive functional limitations reported by Ms. Wheeler. Plaintiff, in sum, fails to demonstrate any error in the evaluation of the lay testimony.

## CONCLUSION

Plaintiff fails to meet his burden of demonstrating harmful error in the ALJ's decision. This matter should, therefore, be AFFIRMED.

DATED this 15th day of November, 2012.

Mary Alice Theiler
United States Magistrate Judge